# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| FRANK HARMON BLACK; and<br>SOUTHEAST INVESTMENTS, N.C., INC.,<br><br>Plaintiffs,<br><br>v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY; and<br>SECURITIES AND EXCHANGE COMMISSION,<br><br>Defendants. | No. _____<br><br>**COMPLAINT** |

## INTRODUCTION

1. Plaintiffs Frank Black and Southeast Investments, N.C., Inc. ("SEI"), challenge the constitutionality of the Financial Industry Regulatory Authority's ("FINRA") and the Securities and Exchange Commission's ("SEC") administrative adjudication brought against them by FINRA.

2. Frank Black founded SEI and was its registered principal. After a routine cycle examination in 2012–13, FINRA alleged that Black and SEI had violated federal securities laws, SEC regulations, and FINRA rules in a five-count complaint FINRA filed with its in-house Office of Hearing Officers ("OHO").

3. FINRA hearing officers, all appointed by FINRA, adjudicated the alleged violations and sanctioned Black and SEI. The OHO imposed a $243,000 fine on Black and SEI, and a lifetime bar on Black's ability to work in the financial sector. The lifetime bar went into effect in May 2019 and continues to this day.

4. On appeal, the National Adjudicatory Council ("NAC") of FINRA reduced the fine to $146,500 but otherwise affirmed the sanctions and maintained the lifetime bar on Black rendering Black unable to earn a living as a registered

1

representative or continue to run SEI. Black and SEI appealed to the SEC. But four years later the SEC has still not issued a decision.

5. Black and SEI challenge the ongoing administrative adjudication because (1) FINRA's board of governors, national adjudicatory council, and hearing officers are not appointed in compliance with the Appointments Clause yet they exercise significant governmental and executive power, (2) FINRA unlawfully wields the government's legislative, executive, and judicial power in violation of Articles I, II and III of the Constitution and the Fifth Amendment's Due Process Clause while remaining insulated from Congressional appropriations, and (3) FINRA and SEC's adjudication of Black and SEI's private rights and imposition of civil penalties without a jury trial violates the Seventh Amendment to the Constitution.

## PARTIES

6. Frank Harmon Black resides in Rock Hill, South Carolina. He founded SEI in 1997.

7. SEI is a North Carolina corporation, with its principal place of business in Charlotte, North Carolina.

8. Created in 2007, FINRA is an economically self-interested, not-for-profit, quasi-governmental, self-regulatory organization formed under the Securities Exchange Act of 1934.

9. SEC is an agency of the United States.

## JURISDICTION AND VENUE

10. This action arises under the Constitution and laws of the United States, and this Court has federal-question jurisdiction under Article III of the Constitution and 28 U.S.C. § 1331.

11. This Court has jurisdiction to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201, 2202, and Federal Rules of Civil Procedure 57 and 65, and other relief under 28 U.S.C. §§ 1361, 1651.

12. Venue is proper in this district under 28 U.S.C. § 1391(e).

## LEGAL FRAMEWORK

13. The Securities Exchange Act of 1934 ("the Exchange Act") permits registered securities associations ("RSA"), to govern the securities industry, subject to limited SEC oversight. 15 U.S.C. § 78s. RSAs are responsible for "enforc[ing] compliance" with the "provisions" of the Act, and the "rules and regulations thereunder." *Id.* § 78s(g)(1); *see also id.* § 78o-3(b)(7).

14. To buy and sell securities, brokers and dealers must register with the SEC and join an RSA. *Id.* § 78o(a)(1), (b)(1).

15. FINRA is the only RSA registered with the SEC.

16. In addition to enforcing the Exchange Act and its associated regulations, FINRA is empowered to promulgate and enforce its own rules against its own members.

17. To ensure compliance with its rules and regulations or federal securities laws, FINRA initiates enforcement actions by issuing a complaint. FINRA Rule 9211.

18. FINRA's Office of Hearing Officers conducts the adjudication, FINRA Rules 9212, 9213, and issues a written decision, FINRA Rule 9268. A "bar or an expulsion" is "effective immediately." FINRA Rule 9268(f)(2).

19. On appeal to FINRA's National Adjudicatory Council, FINRA Rule 9311, NAC "may affirm, dismiss, modify, or reverse with respect to each finding, or remand the disciplinary proceeding with instructions" and "may affirm, modify, reverse, increase, or reduce any sanction . . . or impose any other fitting sanction," FINRA Rule 9348.

20. The NAC then issues a decision.

21. If no member of FINRA's board of governors calls for review of the NAC's decision, it becomes final. FINRA Rule 9349(c).

22. When FINRA imposes civil penalties, those penalties do not go into the federal government's treasury but instead become part of FINRA's operating budget. FINRA Rule 8320. In 2021, FINRA reported that it collected $103 million in fines, which became part of its operating budget. *See* 2021 FINRA Financial Annual Report at 1, 3, 9, https://www.finra.org/sites/default/files/2022-06/2021-FINRA-Financial-Annual-Report.pdf.

23. The accused may then seek SEC review of FINRA's decision. FINRA Rule 9370, 15 U.S.C. § 78s(d)–(h).

24. The SEC reviews FINRA's decision, and may modify, affirm, or set it aside. *Id*. § 78s(e)(1)(A)–(B).

25. The SEC sets aside a FINRA decision if FINRA "imposes any burden on competition not necessary or appropriate" to further the purposes of the Securities Exchange Act, or if the sanction "is excessive or oppressive." *Id*. §78s(e)(2).

26. The SEC does not conduct a de novo review and does not find facts.

27. Final decisions by the SEC are subject to review by a federal appellate court with the filing of a petition by an aggrieved party. *See* 15 U.S.C. § 78y.

28. The federal appellate court does not conduct de novo review and does not find facts.

## FACTS

29. Black founded SEI in 1997.

30. At all relevant times, SEI was a registered broker-dealer, and Black was a registered principal of SEI.

31. During the relevant period, Black maintained a 95% ownership stake in SEI and operated the company.

32. SEI conducted general securities business from its main office in Charlotte, North Carolina.

33. SEI's registered representatives sold investment products.

4

34. From March 2010 through May 2015, SEI had between 114 and 133 registered representatives and between 7 and 38 FINRA-registered branch offices.

35. Black and SEI maintained appropriate registrations with FINRA and SEC, as required by relevant statutes, regulations, and FINRA rules.

36. During a routine examination of SEI, FINRA contacted SEI's registered representatives located in New York, North Carolina, Ohio, and South Carolina.

37. In September 2012, FINRA asked Black for records documenting SEI's office inspections.

38. As relevant here, under FINRA's predecessor, the National Association of Securities Dealers (NASD), branch offices had to be inspected at least every three years. NASD Rule 3010(c)(1)(B) (setting inspection schedule), (g)(2) (defining "branch office").

39. Black produced an inspections calendar, a three-page document listing 43 inspections he conducted between March 2010 and August 2012.

40. The Calendar provided the date by which each branch inspection was to be completed and the date Black performed the branch inspection.

41. In 2015, FINRA filed a five-count complaint against Black and SEI.

42. FINRA alleged that Black and SEI: (1) Violated FINRA Rules 8210, 4511, and 2010 by inaccurately reporting that Black had conducted site inspections of each registered representative's office; (2) Violated FINRA Rules 8210 and 2010 for providing inadequate inspection documents for those site inspections; (3) Violated NASD Rule 3010 for failing to supervise the registered representatives; (4) Failed to preserve all relevant business records in violation of NASD Rule 3110, FINRA Rules 4511 and 2010, Section 17(a) of the Exchange Act, and SEC Rule 17a-4 (17 C.F.R. § 240.17a-4); and (5) Black failed to maintain adequate written supervisory procedures over SEI in violation of NASD Rule 3010 and FINRA Rules 3110 and 2110.

43. FINRA's OHO held a hearing on the charges.

44. OHO found violations on all counts and imposed fines totaling $243,000 against both Black and SEI. The OHO decision is attached as Exhibit 1.

45. OHO also permanently banned Black from ever registering with FINRA again—the so-called "corporate death penalty."

46. Black and SEI appealed to FINRA's NAC.

47. On May 23, 2019, NAC vacated the findings that Black maintained deficient supervisory systems related to emails, that SEI and Black failed to maintain emails properly, and that SEI willfully failed to maintain certain emails.

48. NAC affirmed all other findings, reduced the fine to $146,500, and maintained the lifetime ban against Black. The NAC decision is attached as Exhibit 2.

49. Black and SEI appealed the NAC decision to the SEC.

50. The lifetime bar on Black became effective on May 23, 2019.

51. To date, despite the passage of more than four years, the SEC has not issued any decision.

## INJURIES

52. Black and SEI suffer a here-and-now injury, having been subjected to, and remaining subjected to, an unconstitutionally structured decision-making process.

53. Black and SEI were injured when they were subjected to FINRA's unconstitutionally structured decision-making process that deprived them of their constitutional rights, which injuries continue while the case remains pending at SEC because the lifetime ban imposed on Black currently remains in effect.

54. Black and SEI have spent significant time and money in FINRA investigations and hearings, and continue to do so in the pending SEC proceedings.

55. Black and SEI have been fined at least $146,500 by FINRA, which fines remain to be collected by FINRA.

56. Black is injured by the lifetime ban imposed on him by FINRA. That ban has been in effect since May 23, 2019, that is, for 4.5 years and counting. That ban has resulted in a significant loss of business and earnings to Black, as well as decrease in the value of SEI.

57. Due to the ban, Black can no longer perform any financial work or work in the financial industry as a registered representative.

58. Black and SEI have spent significant time and money on compliance costs with FINRA's investigations and adjudication, time and money that could have been spent on growing SEI and creating value for SEI clients.

59. As a result of FINRA's decision, Black and SEI suffered reputational and financial injury. SEI lost brokers and clients in the wake of FINRA's prosecution, and SEI's profits declined by thousands of dollars. FINRA publicized the sanctions it imposed on Black and SEI. Those publications continue to adversely affect SEI's ability to recruit brokers and clients.

60. After FINRA alleged Black and SEI of wrongdoing, FINRA has increased the frequency and invasiveness of its examinations of SEI, claiming a nonexistent "culture of noncompliance" at SEI. OHO Decision at 41. Black and SEI have suffered reputational and classic pocketbook injuries as a result. Black worked in various capacities at SEI, but because he is barred, SEI has to pay an outside consultant to perform services for SEI that Black had previously performed.

## COUNT 1 (Appointments Clause)

61. Under the Appointments Clause, principal "Officers of the United States" must be appointed by the President with the advice and consent of the Senate, and "inferior Officers," as relevant here, must be appointed by the President or by "the Heads of Departments" who are in turn appointed by the President with the advice and consent of the Senate. U.S. Const. art. II, § 2, cl. 2.

62. FINRA's OHO and NAC hearing officers are "Officers of the United States" who exercise significant governmental and executive power. But they are not appointed in compliance with the Appointments Clause because neither the President nor any "Heads of Departments" appointed them. Rather, these hearing officers are appointed by FINRA, a quasi-governmental organization.

63. FINRA's board of governors, which exercises significant governmental and executive power, comprises "Officers of the United States," who are also not appointed in compliance with the Appointments Clause. Neither the President nor any "Heads of Departments" appointed them.

64. FINRA hearing officers and board of governors exercise significant executive power. They are tasked by statute with enforcing the nation's securities laws. They can levy sanctions that carry the force of federal law. And they demand testimony, rule on motions, regulate the course of a hearing, decide the admissibility of evidence, and enforce compliance with discovery orders by punishing contempt. They may affirm, dismiss, modify, reverse, remand, increase or reduce any sanction, or impose any fitting sanction.

65. Officers not appointed under the Appointments Clause concluded that Black and SEI violated federal statutes, federal-agency rules, and FINRA rules. These officers imposed monetary fines on Black and SEI and permanently banned Black from working in the financial sector.

66. Lack of proper appointment in compliance with the Appointments Clause renders these officers' actions void. And the statutes and SEC regulations that purport to give FINRA the authority to take these actions against Black and SEI are therefore unconstitutional.

**COUNT 2 (Private Nondelegation Doctrine)**

67. The Congress of the United States is vested with "[a]ll legislative powers herein granted." U.S. Const. art. I, § 1. That power cannot be delegated to a quasi-

8

governmental entity such as FINRA.

68. The President is vested with the federal government's executive power. U.S. Const. art. II, § 1. That power cannot be delegated to a quasi-governmental entity such as FINRA.

69. Federal courts are vested with the federal government's judicial power. U.S. Const. art. III, § 1. That power cannot be delegated to a quasi-governmental entity such as FINRA.

70. The Due Process Clause of the Fifth Amendment prohibits federal agencies from delegating their administrative power to a quasi-governmental entity such as FINRA.

71. FINRA is not a federal agency. Congress and SEC have delegated the federal government's power to create laws that govern the securities industry to FINRA. Congress and SEC have delegated the federal government's executive power to enforce the nation's securities laws to FINRA. Congress and SEC have delegated the federal government's judicial power to decide cases commenced against private parties by FINRA to FINRA. The delegation of governmental power to FINRA violates Articles I, II, III of the Constitution and the Fifth Amendment's Due Process Clause.

72. While FINRA exercises significant governmental powers, it remains insulated from Congress's appropriations power under U.S. Const. art. I, § 9, cl. 7. FINRA enjoys perpetual industry self-funding. Congress does not appropriate funds to FINRA for its performance of government functions. And the fines FINRA collects are not returned to the federal treasury but are instead kept by FINRA.

73. FINRA's actions, findings, and conclusions against Black and SEI undertaken pursuant to such unconstitutional delegation of governmental power to FINRA are therefore void. And the statutes and SEC regulations purporting to give

FINRA the power to take these actions against Black and SEI are therefore unconstitutional.

## COUNT 3 (Jury Trial)

74. A person cannot be deprived of life, liberty, or property without due process of law, which includes the right to notice and an opportunity to be heard before an Article III court.

75. A suit seeking civil monetary penalties is subject to the protections of the Seventh Amendment and requires a jury trial.

76. The lifetime ban imposed by FINRA on Black deprives Black of liberty and property without due process of law and deprives him of a jury trial.

77. The civil monetary fines FINRA imposed on Black and SEI deprive them of property without due process of law and deprive them of a jury trial.

78. The statutes purporting to delegate to FINRA the power to take such actions against Black and SEI are therefore unconstitutional. And the actions FINRA took against Black and SEI are therefore void.

## RELIEF REQUESTED

Based on the foregoing, Black and SEI respectfully request the following relief:

79. A declaration that FINRA's board of governors and OHO and NAC hearing officers are not appointed in compliance with the Appointments Clause, a declaration that the relevant statutes and SEC regulations that empower improperly appointed officers to exercise the federal government's powers are unconstitutional, and thereby issue an injunction directing FINRA and SEC to vacate the order against Black and SEI;

80. A declaration that FINRA exercises the federal government's legislative, executive, and judicial powers in violation of Articles I, II, and III of the Constitution and the Fifth Amendment's Due Process Clause, a declaration that the relevant federal statutes and SEC regulations that delegate governmental power to FINRA

10

are unconstitutional, and thereby issue an injunction directing FINRA and SEC to vacate the order against Black and SEI;

81. A declaration that FINRA's actions against Black and SEI deprive them of life, liberty or property without due process of law and deprive them of a jury trial, a declaration that the relevant federal statutes and SEC regulations that empower FINRA to so act against Black and SEI are unconstitutional, and thereby issue an injunction directing FINRA and SEC to vacate the order against Black and SEI;

82. Issue such orders and writs, including in the nature of mandamus or rule nisi as are appropriate.

83. Award nominal damages in the amount of $100;

84. Award such additional relief as the court deems just, equitable, and proper.

DATED: October 30, 2023.

Respectfully submitted,

/s/ Adam F. Griffin
ADAM F. GRIFFIN
  N.C. Bar No. 55075
ADITYA DYNAR*
  D.C. Bar No. 1686163
CALEB KRUCKENBERG*
  Va. Bar No. 97609
Pacific Legal Foundation
3100 Clarendon Blvd.
Suite 1000
Arlington, VA 22201
Tel.: (202) 888-6881
Fax: (916) 419-7747
AGriffin@pacificlegal.org
ADynar@pacificlegal.org
CKruckenberg@pacificlegal.org

*Counsel for Plaintiffs*

*\*Pro Hac Vice motion forthcoming*