IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| FRANK HARMON BLACK; and<br>SOUTHEAST INVESTMENTS, N.C., INC.,<br><br>Plaintiffs,<br><br>v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY; and<br>SECURITIES AND EXCHANGE COMMISSION,<br><br>Defendants. | No. 3:23-cv-00709<br><br>**DECLARATION OF<br>FRANK HARMON BLACK** |

## DECLARATION OF FRANK HARMON BLACK

I, Frank Harmon Black, being of majority age and competent mind, declare under penalty of perjury that the following is true and correct:

1. I am a citizen of the United States and a resident of the State of South Carolina. I make this Declaration based on my personal knowledge unless otherwise stated.

2. In 1997, I founded Southeast Investments, N.C., Inc. (SEI), a North Carolina corporation, with its principal place of business in Charlotte, North Carolina.

3. To buy and sell securities, brokers and dealers, like myself and SEI, must register with the SEC and join FINRA.

4. During all relevant times, SEI was a registered broker-dealer, and I was a registered principal of SEI.

1

5. During all time periods relevant to this suit, SEI and I maintained appropriate registrations with FINRA and SEC, as required by relevant statutes, regulations, and FINRA rules.

6. During the relevant period, I maintained a 95% ownership stake in SEI and operated the company. SEI conducted general securities business from its main office in Charlotte, North Carolina.

7. SEI's registered representatives sell investment products.

8. From March 2010 through May 2015, SEI had between 114 and 133 registered representatives and between 7 and 38 FINRA-registered branch offices.

9. During a routine cycle examination of SEI, FINRA contacted four of SEI's registered representatives located in New York, North Carolina, Ohio, and South Carolina.

10. In September 2012, FINRA asked me for records documenting SEI's office inspections.

11. I produced an inspections calendar, a three-page document listing 43 inspections I conducted between March 2010 and August 2012.

12. The Calendar provided the date by which each branch inspection was to be completed and the date I performed each branch inspection.

13. In 2015, FINRA filed a five-count complaint against me and SEI. *See* Exhibit 1.

14. FINRA neither alleged nor proved that SEI or I harmed any client in any way. FINRA's entire case was related to office inspections and email retention.

15. FINRA's Office of Hearing Officers (OHO) held a hearing on the charges. FINRA's OHO decided in favor of FINRA on all counts. It then imposed fines totaling $243,000 against both me and SEI. The OHO decision is attached as Exhibit 2.

16. Before the hearing, FINRA enforcement officers interviewed four former SEI representatives, who testified under oath. Those interviews were summarized in notes kept by FINRA in its regular course of business. *See* Exhibit 3.

17. Before the OHO hearing, SEI and I served discovery requests on FINRA, including requesting notes taken by FINRA examiners in speaking with SEI representatives. The FINRA employee who served as the OHO hearing officer denied those requests. *See* Exhibit 3.

18. SEI and I filed a motion to compel production of the notes, but the OHO hearing officer again denied that motion. In that order, the OHO hearing officer noted that the notes contained no exculpatory evidence. *See* Exhibit 4 at 6.

19. Only after the OHO and National Adjudicatory Council (NAC) hearing had concluded did NAC issue an interim order compelling FINRA to produce the notes taken by FINRA examiners. *See* Exhibit 5.

20. FINRA argued (Exhibit 6) and its hearing officer agreed (Exhibit 7) that not preserving evidence in the form of notes taken by FINRA examiners was harmless error. FINRA however knew it has the duty to preserve evidence based on the cease-and-desist order that SEC entered against FINRA, sanctioning FINRA for not adequately preserving documents. *See* Exhibit 8 at 4. And the error was not harmless because the emails FINRA produced after the NAC hearing concluded showed that

3

FINRA's attorney and FINRA's witnesses against me and SEI made false statements under oath at the hearing. *See* Exhibit 9 at 6–15.

21. FINRA then claimed the interview notes it had taken managed to disappear despite SEI and my request to preserve all evidence. *See id.* at 1–5.

22. Ultimately, because of the interim order, FINRA only provided emails in place of the actual notes. *See id.* at 6–15.

23. The emails that FINRA disclosed showed that FINRA's witnesses against me and FINRA's attorney gave false testimony during the OHO and NAC hearings. *Id.* But because the emails were not produced until after all the FINRA hearings had concluded, SEI and I had no fair and meaningful opportunity to depose, cross-examine, or impeach testifying witnesses.

24. SEI and I pointed out this discrepancy to FINRA. But FINRA argued that it had no duty to correct false statements of FINRA personnel or witnesses testifying on FINRA's behalf. *See* Exhibits 10, 11, 12, 13.

25. FINRA thus failed and refused to correct false statements it presented as evidence at both the OHO and NAC hearings. *See id.*

26. What's more, FINRA's attorney used what he knew or should have known to be false statements made under oath in his arguments and briefs submitted during the OHO and NAC hearings. *See id.*

27. These are just a few examples showing how SEI and I did not receive a fair, impartial hearing at FINRA. *See id.*

28. At the conclusion of FINRA's biased and unfair hearing, the OHO permanently prohibited me from ever registering with FINRA again—the so-called corporate death penalty. In effect, FINRA banned me from ever practicing my profession again.

29. SEI and I appealed to FINRA's NAC.

30. On May 23, 2019, the NAC vacated the findings that I maintained deficient supervisory systems related to emails, that SEI and I failed to maintain certain emails properly, and that SEI willfully failed to maintain certain emails. The NAC affirmed all other findings, reduced the fine to $146,500, and maintained the lifetime ban against me. The NAC decision is attached as Exhibit 14.

31. SEI and I appealed the NAC decision to the SEC.

32. FINRA's lifetime bar against me became effective on May 23, 2019.

33. To date, despite the passage of more than four years, the SEC has not issued any decision.

Executed on November 16, 2023.

*Frank Harmon Black*
Frank Harmon Black