| | | |
|---|---|---|
| FRANK HARMON BLACK AND SOUTHEAST INVESTMENTS, N.C., INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **MEMORANDUM AND ORDER** |
| SECURITIES AND EXCHANGE COMMISSION AND FINANCIAL INDUSTRY REGULATORY AUTHORITY, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**THIS MATTER** is before the Court on Plaintiffs Frank Harmon Black and Southeast Investments, N.C., Inc.'s Motion for Summary Judgment (Doc. No. 45); Defendants Financial Industry Regulatory Authority's ("FINRA") and the Security and Exchange Commission's ("SEC") Motions for Summary Judgment (Doc. Nos. 49, 51); Plaintiffs' Motion for a Speedy Hearing of a Declaratory Judgment Action (Doc. No. 70); and FINRA's Motion to Dismiss for Lack of Jurisdiction (Doc. No. 73). For the reasons explained below, FINRA's Motion to Dismiss (Doc. No. 73) is **GRANTED** and Plaintiffs' and Defendants' Motions for Summary Judgment and Plaintiffs' Motion for a Speedy Hearing (Doc. Nos. 45, 49, 51, 70) are **DENIED AS MOOT**.

I.     BACKGROUND

This case involves a web of proceedings at various levels—before FINRA, the SEC, the Fourth Circuit, and this Court. The interplay between all three is an important consideration to the jurisdictional questions before this Court, so the Court explains the procedural maze at issue herein. But first, the Court will address the typical regulatory scheme for SEC claims.

### A. The Regulatory Scheme

Through the Securities and Exchange Act ("Exchange Act"), 15 U.S.C. § 78a *et seq.*, Congress established the SEC and authorized it to oversee and regulate the securities industry and address potential violations of federal securities laws. The SEC may do so either by instituting an administrative proceeding or by filing an enforcement action in federal district court. *See, e.g.*, 15 U.S.C. §§ 78u(d), 78u-1(a)(1), 78u-3. In that way, the Exchange Act "regulates securities markets and the business of securities brokers and dealers." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware*, 414 U.S. 117, 127 (1973).

The Exchange Act "maintain[s] 'a system of cooperative self-regulation through voluntary associations of brokers and dealers' to supplement the SEC's regulation of the securities industry." *Black v. SEC*, 125 F.4th 541, 543 (4th Cir. 2025); 15 U.S.C. § 78o-3. "Pursuant to this statutory framework, brokers and dealers in the securities industry must join a national securities association — that is, FINRA — which itself is subject to comprehensive oversight by the SEC." *Id.* (citing 15 U.S.C. §§ 78o(a)(1), (b)(1); 78s). FINRA is a private, not-for-profit corporation headquartered in Delaware. (Doc. No. 49-2 at 7). As a national securities association, FINRA is a self-regulatory organization that is "mandated to self-regulate the securities and financial industries of the United States by disciplining members that violate an association's rules or the federal securities laws." *Black*, 125 F.4th at 543; 15 U.S.C. §§ 78o-3(b)(6)–(7), 78c(a)(26). Accordingly, under the Exchange Act, FINRA may initiate disciplinary proceedings when it believes one of its members has violated one or more federal securities laws or regulations. 15 U.S.C. § 78o-3(h)(1).

If FINRA seeks to discipline one of its members, FINRA must "bring specific charges, notify such member or person of, and give him an opportunity to defend against, such charges, and keep a record." *Id.* FINRA hears disciplinary actions by way of a three-member panel. FINRA

Rule 9231. A party may appeal the panel's adverse decision to FINRA's National Adjudicatory Council ("NAC"). FINRA Rules 1015, 9311. This appeal typically operates as a stay of any disciplinary action until NAC issues a decision. FINRA Rule 9311(b).

If FINRA imposes "any final disciplinary sanction" against a member upon the conclusion of its disciplinary proceedings, FINRA must file a notice with the SEC of such action. 15 U.S.C. § 78s(d)(1). The aggrieved party may appeal FINRA's decision to the SEC, or the SEC may undertake such review on its own motion. *Id.* § 78s(d)(2). An appeal to the SEC does not stay the disciplinary proceeding, but the SEC may invoke such a stay. *Id.* The SEC, "after notice and opportunity for hearing" may "affirm, modify, or set aside the sanction." *Id.* § 78s(e)(1).

Ultimately, an aggrieved party may seek judicial review in the appropriate Court of Appeals of the United States. 15 U.S.C. § 78y(a)(3). Under 15 U.S.C. § 78y(a)(3), "[o]n the filing of the petition, the [circuit] court has jurisdiction, which becomes exclusive on the filing of the record, to affirm or modify and enforce or to set aside the order in whole or in part." *Id.*

### B. The Various Proceedings

The proceedings before this Court began on October 30, 2023, when Plaintiffs Frank Harmon Black ("Black") and Southeast Investments, N.C., Inc., ("Southeast Investments") filed their complaint against Defendants FINRA and the SEC seeking redress from Defendants' allegedly unconstitutionally structured scheme of private and administrative adjudication. (Doc. No. 1). However, the underlying administrative proceedings at issue date back more than a decade from today.

Black has worked in the securities industry since 1971 and formed Southeast Investments in 1997. (Doc. No. 45-2 ¶¶ 1–2). From 2010 to 2015, Black owned 95 to 100 percent of Southeast Investments, which has been a member of FINRA since 1997. *Id.* ¶¶ 3–4.

In September 2015, FINRA commenced disciplinary proceedings against Plaintiffs,

alleging three violations of FINRA rules and federal securities laws. *Id.* ¶ 7. Ultimately, the FINRA panel found in favor of FINRA and imposed fines totaling $243,000 against Plaintiffs and permanently barred Black from registering with FINRA. *Id.* ¶¶ 8–9. Plaintiffs appealed that decision to NAC, and NAC affirmed the lifetime bar against Black but reversed in part the fines, reducing them to $146,000, comprised of $73,500 for alleged false testimony and fabrication of documents and $73,500 for supervisory and email retention failures. *Id.* ¶¶ 10–11. On May 23, 2019, Plaintiffs appealed NAC's decision to the SEC. *Id.* ¶ 13.

Over four and a half years later, while that appeal to the SEC sat pending and Black remained barred, Plaintiffs filed suit in this Court on October 30, 2023. *Id.* ¶¶ 16–17; (Doc. No. 1). Plaintiffs allege that they suffer "a here-and-now injury, having been subjected to, and remaining subjected to, an unconstitutionally structured decision-making process." (Doc. No. 1 ¶ 52). At that time, Plaintiffs were subject to $146,000 in fines by FINRA, and Black was subject to the lifetime ban imposed on him by FINRA. *Id.* ¶¶ 55–56. Plaintiffs bring three claims: (1) that FINRA's officers and board of governors lack proper appointment under the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, which renders their actions void; (2) that FINRA's actions, findings, and conclusions against Plaintiffs are taken pursuant to an unconstitutional delegation of power in violation of Articles I, II, and III of the Constitution and the Fifth Amendment's Due Process Clause; and (3) that FINRA's lifetime ban and civil monetary fines imposed on Plaintiffs deprive them of property without due process of law and a jury trial under the Seventh Amendment and Article III. (Doc. No. 1 at 7–10). Plaintiffs seek a declaration of the unconstitutionality of FINRA's structure and authority, and an injunction directing FINRA and the SEC to vacate the order against Plaintiffs. *Id.* ¶¶ 79–81. Additionally, Plaintiffs request nominal damages in the amount of $100 and any additional relief that the Court deems just, equitable, and proper. *Id.* ¶¶ 83–84.

Plaintiffs moved for a preliminary injunction in this Court on November 22, 2023. (Doc. No. 9). Shortly thereafter, on December 7, 2023, the SEC issued its decision affirming in part, setting aside in part, and remanding in part FINRA's decision. (Doc. No. 45-2 ¶¶ 18–19). The SEC reversed FINRA's holding regarding false documents and testimony for consideration of alleged spoliation of evidence and because FINRA's untimely production of notes and memorandum in the case was not harmless error. *Id.* ¶ 22; (Doc. Nos. 50-1 ¶ 22; 31-1 at 18–20). The SEC reduced the fine to $73,500, set aside the lifetime bar against Black, and remanded the case back to FINRA for further proceedings consistent with the SEC's decision. (Doc. No. 45-2 ¶¶ 22–23; 50-1 ¶¶ 22–23). Indeed, seven years after Plaintiffs were first subjected to FINRA proceedings, they returned to the same place.

On December 18, 2023, the parties jointly moved to withdraw the motion for preliminary injunction because Plaintiffs obtained the relief sought—the lifting of the lifetime bar on Black. (Doc. Nos. 31; 31-1). The next day, Plaintiffs filed a second motion for preliminary injunction. (Doc. No. 32). Plaintiffs asked the Court to "enjoin FINRA's adjudication until Article III courts rule on the constitutionality of FINRA and SEC adjudication." (Doc. No. 33 at 2). That same day, on December 19, 2023, Plaintiffs petitioned the Fourth Circuit for review of SEC's decision and order. (Doc. No. 45-2 ¶ 24); *Black v. Sec. & Exch. Comm'n*, 125 F.4th 541, 545 (4th Cir. 2025). One day later, on December 20, 2023, the Magistrate Judge granted Plaintiffs' motion to withdraw their first motion for preliminary injunction. (Doc. No. 35).

In light of the pending petition for Fourth Circuit review, on January 19, 2024, the parties jointly moved for a six-month stay in this Court's proceedings, and Plaintiffs moved to withdraw their second preliminary injunction motion, both of which the Magistrate Judge granted that same day. (Doc. Nos. 38, 39). The parties explained that they requested a six-month stay of the FINRA

disciplinary proceedings from NAC, which is the same relief requested in their second motion for preliminary injunction. (Doc. No. 38-1 at 1). The Magistrate Judge continued the stay until October 30, 2024. (Doc. No. 42).

On January 14, 2025, the Fourth Circuit concluded the SEC's decision was not final due to the SEC's partial remand to FINRA and dismissed Plaintiffs' petition for lack of jurisdiction. *Black*, 125 F.4th at 547–48. Thereafter, in this Court, Plaintiffs filed their Motion for Summary Judgment on February 6, 2025, (Doc. No. 45), and Defendants filed their Motions for Summary Judgment on April 4, 2025. (Doc. Nos. 49, 51). These motions remain pending before this Court.

On June 6, 2025, FINRA dismissed the remanded portion of the case. (Doc. No. 81-1 at 2). And on June 25, 2025, Plaintiffs again petitioned for review in the Fourth Circuit challenging the SEC disciplinary sanctions at issue in this Court, arguing that the SEC proceedings were, at that point, final, which entitled Plaintiffs to review in the circuit court. Petition for Review of Agency Order, *Black v. SEC*, No. 25-1718 (4th Cir. June 25, 2025) (Doc. No. 3). Plaintiffs followed that petition with a Motion for Jurisdictional Determination. *Black*, No. 25-1718 (4th Cir. June 27, 2025) (Doc. No. 10). The same day that Plaintiffs petitioned for review in the Fourth Circuit, they filed in this Court a "Motion for a Speedy Hearing of a Declaratory Judgment Action, Fed[.] R. Civ. P. 57." (Doc. No. 70).

On June 30, 2025, at the Fourth Circuit, FINRA moved to intervene in support of the SEC. Motion, *Black*, No. 25-1718 (4th Cir. June 30, 2025) (Doc. No. 15), which the Fourth Circuit granted on July 10, 2025. Order, *Black*, No. 25-1718 (4th Cir. July 11, 2025) (Doc. No. 21).

Soon thereafter, on July 2, 2025, before the SEC at the administrative level, Plaintiffs filed a motion to dismiss with prejudice all the claims FINRA brought against them, both the remanded claims and the sustained claims because of, among other reasons, FINRA's unconstitutional

6

adjudicatory structure. Respondent's Motion to Dismiss, *In re Se. Invs., N.C., Inc.*, SEC No. 3-19185 (July 2, 2025); (Doc. No. 76 at 7).

On July 9, 2025, in this Court, Defendant FINRA filed a motion to dismiss for lack of jurisdiction following what they argue was the conclusion of the underlying FINRA proceedings and Plaintiffs' petition for review in the Fourth Circuit, which stated that the FINRA proceedings were, at that point, final. (Doc. No. 73).

On July 22, 2025, the Fourth Circuit issued an order deferring consideration of the pending Motion for Jurisdictional Determination until it reviewed the appeal on the merits. Order, *Black*, No. 25-1718 (4th Cir. July 22, 2025) (Doc. No. 27). On July 29, 2025, the parties jointly moved to hold the Fourth Circuit's review in abeyance while the SEC considered Plaintiffs' pending motion before the SEC. Joint Motion, *Black*, No. 25-1718 (4th Cir. July 29, 2025) (Doc. No. 33). On August 1, 2025, the Fourth Circuit issued an order holding the case in abeyance pending a decision by the SEC on Plaintiff's motion to dismiss. Order, *Black*, No. 25-1718 (4th Cir. Aug. 1, 2025) (Doc. No. 34).

On December 17, 2025, this case was reassigned to the undersigned. On January 30, 2026, the SEC denied Plaintiffs' motion to dismiss and reissued its previous opinion and order for purposes of establishing finality for the Fourth Circuit to review. (Doc. No. 81-1 at 7–8) ("We emphasize that our limited purpose in [reissuing the 2023 Order] is solely to enable judicial review of the Commission's determinations with respect to the sustained claims as contained in the 2023 Order."). The SEC concluded that it did not have authority to review the claims that FINRA dismissed (the remanded claims) and rejected Plaintiffs' challenges to the sustained claims as improperly raised. (Doc. No. 81-1 at 3–4) ("Applicants have twice implicitly recognized that there is nothing more for the Commission to do with respect to the sustained claims."). Further, the

Commission found that Plaintiffs had forfeited their new challenges, specifically, the constitutional challenges, as they were untimely raised. (Doc. No. 81-1 at 4). That same day, the SEC requested a 30-day extension in the Fourth Circuit to file the administrative record, which the circuit court granted. Order, *Black*, No. 25-1718 (4th Cir. Jan. 30, 2026) (Doc. No. 46).

On February 4, 2026, FINRA filed a notice of supplemental authority in this Court informing the Court of the January 30, 2026 SEC decision terminating the SEC's consideration of Plaintiffs' application for review of the FINRA disciplinary proceeding against them. (Doc. No. 81 at 1) (citing *In re Se. Invs., N.C., Inc.*, Exchange Act Release No. 104750 (Jan. 30, 2026)); (Doc. No. 81-1).

On February 9, 2026, Plaintiffs filed a motion before the SEC asking that it reconsider its January 30, 2026, and December 7, 2023 orders. *See* Respondents' Motion for Reconsideration, *In re Se. Invs., N.C., Inc.*, SEC No. 3-19185 (February 9, 2026); (Doc. No. 82).

On February 24, 2026, the parties jointly moved in the Fourth Circuit to place the case in abeyance pending a motion to reconsider that Plaintiffs filed before the SEC. Joint Motion, *Black*, No. 25-1718 (4th Cir. Feb. 24, 2026) (Doc. No. 47). The Fourth Circuit granted that motion and held consideration of Plaintiffs' petition in abeyance. Order, *Black*, No. 25-1718 (4th Cir. Feb. 25, 2026) (Doc. No. 48); (Doc. No. 82). On March 2, 2026, Plaintiffs filed a notice in this Court to inform the Court of the status of the case in the Fourth Circuit. (Doc. No. 82). On March 16, 2026, the SEC denied Plaintiffs' motion for reconsideration (Doc. No. 83-1), and on March 18, 2026, FINRA filed a notice in this Court to inform the Court of the same. (Doc. Nos. 83; 83-1). Further, Plaintiffs have also filed petitions for review in the Fourth Circuit of the January 2026 and March 2026 Orders, which the Fourth Circuit has consolidated. *See* Order, *Black v. SEC*, No. 25-1718 (4th Cir. Mar. 18, 2026) (Doc. No. 53) (consolidating the petitions in case nos. 25-1718, 26-1278,

and 26-1307).

On March 19, 2026, FINRA moved to intervene at the Fourth Circuit. Motion, *Black v. SEC*, No. 25-1718 (4th Cir. Mar. 19, 2026) (Doc. No. 44), which the Fourth Circuit granted. *Black*, No. 25-1718 (4th Cir. Mar. 20, 2026) (Doc. No. 45).

We now arrive at the issues before this Court.

## II.     LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" which "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted). Subject-matter jurisdiction in federal court exists only where a federal question is presented, 28 U.S.C. § 1331, or when the parties are of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of claims where the Court lacks jurisdiction over the subject matter of the lawsuit. Fed. R. Civ. P. 12(b)(1). Lack of subject-matter jurisdiction may be raised at any time by a litigant or the court itself. *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The plaintiff bears the burden of proving that the court has subject-matter jurisdiction over a case or claim. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

## III.     DISCUSSION

The Exchange Act provides for an internal review process followed by review in the appropriate U.S. Court of Appeals after a final order has been issued. The question before the

Court is whether this Court has jurisdiction over Plaintiffs' claims despite that statutory review scheme. This inquiry requires the Court to go through "twists and turns" to determine its jurisdiction, with the answer to that question changing by the day. *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 207 (Gorsuch, J., concurring). As explained below, when considering the current posture under the difficult-to-apply *Thunder Basin* analysis, it appears to the Court that though it had jurisdiction just a couple weeks ago, it no longer has jurisdiction to hear Plaintiffs' claims.

### A. General Rule and *Axon*

District courts ordinarily have jurisdiction to hear challenges to federal agency action under 28 U.S.C. § 1331, which provides for federal court jurisdiction over actions "arising under" federal laws. "Congress, though, may substitute for that district court authority an alternative scheme of review." *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 185 (2023). "A special statutory review scheme . . . may preclude district courts from exercising jurisdiction over challenges to federal agency action." *Id.* at 185 (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)). "Whether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." *Thunder Basin Coal Co.*, 510 U.S. at 207 (citations omitted).

"The method Congress typically chooses is . . . review in a court of appeals following the agency's own review process." *Axon Enter., Inc.*, 598 U.S. at 185 (noting this is the method the Exchange Act uses). "[T]he creation of such a review scheme for agency action divests district courts of their ordinary jurisdiction over the covered cases." *Id.* (citing cases). Essentially, the agency replaces the district court, and the circuit court provides judicial review. *Id.*; *see also Bennett v. U.S. Sec. & Exch. Comm'n*, 844 F.3d 174, 182 (4th Cir. 2016) ("Congressional intent to deny collateral district-court challenges is 'fairly discernible' from the text and structure of the

10

Exchange Act.").

But a statutory review scheme does not necessarily divest the district court from jurisdiction over every claim regarding agency action. *Axon Enter., Inc.*, 598 U.S. at 185. The claims brought must also be "of the type Congress intended to be reviewed within [the] statutory structure." *Id.* at 186 (quoting *Thunder Basin*, 510 U.S. at 212). To make this determination, the Court must consider three factors, known as the *Thunder Basin* factors. *Id.* First, the court must determine whether "precluding district court jurisdiction [would] 'foreclose all meaningful judicial review' of the claim." *Id.* (quoting *Thunder Basin*, 510 U.S. at 212–13). Second, the Court must determine whether the plaintiff's claims are "wholly collateral to [the] statute's review provisions." *Id.* (quoting *Thunder Basin*, 510 U.S. at 212). Third, the Court must determine whether the claims are "outside the agency's expertise." *Id.*

"When the answer to all three questions is yes, 'we presume that Congress does not intend to limit jurisdiction.'" *Id.* (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010)). If the factors point in different directions, "[t]he ultimate question is how best to understand what Congress has done—whether the statutory review scheme, though exclusive where it applies, reaches the claim in question." *Id.*

In *Axon*, the Supreme Court addressed the types of challenges that district courts can review on collateral attack despite the presence of a statutory review scheme. *Id.* at 188. The Supreme Court consolidated two cases with the same general set of facts:

> [T]he respondent in an administrative enforcement action sued in district court prior to an ALJ decision, seeking to enjoin the Commission's proceeding. Each suit charged that some fundamental aspect of the Commission's structure violates the Constitution; that the violation made the entire proceeding unlawful; and that being subjected to such an illegitimate proceeding causes legal injury (independent of any rulings the ALJ might make).

*Id.* at 182. The Court began with a "30,000-foot view" of the issue by comparing the facts before

11

it to previous cases to conclude that the district court had jurisdiction over the claims at issue. *Id.*

The Court distinguished the claims in *Axon* from those in *Thunder Basin* and *Elgin*, but, relevant here, the Court compared *Axon* to *Free Enterprise Fund*, where the Court concluded that a claim fell outside a statutory review scheme because it was a challenge "to the structure or very existence of an agency." *Id.* at 189; *see Free Enter. Fund*, 561 U.S. at 490. In *Free Enterprise*, the Court explained that "Section 78y provides only for judicial review of *Commission* action, and not every Board action is encapsulated in a final Commission order or rule," the constitutional challenges at issue were "'collateral' to any Commission orders or rules from which review might be sought," and they were "outside the Commission's competence and expertise." *Free Enter. Fund*, 561 U.S. at 490. Particularly, in *Axon*, the Court emphasized that the claims at issue were "structural constitutional challenges" that presented a "here-and-now injury" of "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Axon Enter., Inc.*, 598 U.S. at 191–92. Thus, the Court concluded that the constitutional challenges in *Axon* were akin to those in *Free Enterprise Fund* and could proceed in district court. *Id.* at 188–89.

### B. Plaintiffs' Claims

The Court first concludes that all three of Plaintiffs' claims represent structural constitutional challenges that are materially similar to those in *Axon* and *Free Enterprise*. However, as explained below, *Axon* presents a narrow exception that the Court determines does not apply to the claims at issue due to the near completion of the agency proceedings at the time of this Court's review, which distinguishes the present case from the here-and-now injury in *Axon*.

At the outset, before considering the status of the agency proceedings, the parties dispute whether all three claims are subject to *Axon*. Primarily, the parties dispute Axon's application to Plaintiffs' jury trial claim. (Doc. Nos. 49-1 at 16–19; 52 at 14–22). Defendants argue that the jury-trial claim is not structural, rather it "merely challenges the procedures in Plaintiffs'

12

disciplinary proceeding." (Doc. No. 49-1 at 29). Plaintiffs respond that their "jury-trial claim is about 'the structure or very existence of' FINRA/SEC in-house adjudication" and deciding this claim "on appeal 'is too late to be meaningful.'" (Doc. No. 56 at 2–3) (quoting *Axon Enter., Inc.*, 598 U.S. at 189).

It is clear to the Court that Plaintiffs' jury-trial claim is a structural constitutional challenge. "The Seventh Amendment's jury-trial right does not work alone. It operates together with Article III and the Due Process Clause of the Fifth Amendment to limit how the government may go about depriving an individual of life, liberty, or property. . . . Taken together, all three provisions vindicate the Constitution's promise of a 'fair trial in a fair tribunal.'" *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 141 (2024) (Gorsuch, J., with Thomas, J., joining, concurring). And because the other two claims—the Appointments Clause claim and the private nondelegation doctrine claim—are materially similar to those at issue in *Axon*, the Court concludes these also present structural constitutional challenges.

Despite the similarity between the claims in this case and those in *Axon*, the Court cannot ignore the added wrinkle to the jurisdictional inquiry before it. FINRA moved to dismiss all of Plaintiffs' claims on the premise that all FINRA disciplinary proceedings have "ended," such that Plaintiffs no longer suffer from any alleged here-and-now injury. (Doc. No. 73-1 at 5). FINRA argues that without this here-and-now injury—that is, any additional FINRA proceedings—this Court lacks jurisdiction over the case as there is no basis to apply *Axon*'s exception to the jurisdictional bar created by the Exchange Act's review scheme. (Doc. No. 73-1 at 1). FINRA argues that this renders Plaintiffs' claims moot because "Plaintiffs are not suffering any ongoing harm" now that the FINRA proceedings have ended. (Doc. No. 73-1 at 13).

At the time of FINRA's motion, the SEC proceedings were ongoing. (Doc. No. 76 at 9–

10). However, since the filing of FINRA's motion, the SEC has concluded its proceedings against Plaintiffs. (Doc. Nos. 81, 83, 83-1). Following that conclusion, the Fourth Circuit recently removed the case from abeyance and directed the SEC to file the administrative record. Administrative Record Notice, *Black*, No. 25-1718 (4th Cir. Mar. 18, 2026) (Doc. No. 51).

Though the Court is not persuaded by FINRA's arguments that the conclusion of the FINRA proceedings deprived this Court of jurisdiction, the conclusion of the SEC's proceedings changes the Court's analysis. While Plaintiffs' motion for reconsideration remained pending before the SEC, there was a risk that the SEC could have remanded the matter back to FINRA for further proceedings, thus starting the process over again for Plaintiffs and subjecting them to further unconstitutional proceedings before they could appear before an Article III court. However, as of March 16, 2026, the SEC proceedings have ended, Plaintiffs are back before the Fourth Circuit, and any harm from the underlying proceedings has already happened. Indeed, the Fourth Circuit has removed the case from abeyance and is proceeding forward.

Accordingly, from a 30,000-foot view, the posture of the agency proceedings here distinguishes the present case from *Axon* and *Free Enterprise*. Plaintiffs have moved past FINRA's and the SEC's proceedings such that any injury of "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker" has already occurred, and Plaintiffs may now challenge the proceedings before an Article III court—the Fourth Circuit. *Axon Enter., Inc.*, 598 U.S. at 191.

For these reasons, and recognizing the extensive proceedings that have already occurred, the Court concludes that Plaintiffs are no longer subject to any ongoing unconstitutional proceedings like those at issue in *Axon* and *Free Enterprise*, signaling to this Court that it no longer has jurisdiction to hear Plaintiffs' claims.

### C. *Thunder Basin* Factors

An analysis of the *Thunder Basin* factors, particularly the first factor, further supports the

Court's conclusion that it does not have jurisdiction to adjudicate Plaintiffs' claims. The "*Thunder Basin* roller coaster*" proves difficult to apply in the present scenario, but the Court concludes that an application of those factors distinguishes this case from *Axon* and, as already discussed, divests this Court of jurisdiction to hear Plaintiffs' claims. *Axon Enter., Inc.*, 598 U.S. at 211 (Gorsuch, J., concurring).[1]

### 1. Second and Third Factors

The second and third factors are simple to apply here, so the Court will address them first. In sum, the Court has no doubt that these factors point in favor of jurisdiction. The second factor is whether the claim at issue is "wholly collateral" to the administrative review provisions. *Id.* at 187. The Supreme Court concluded in *Axon* that structural constitutional claims "have nothing to do with the enforcement-related matters . . . and nothing to do with those they would adjudicate in assessing the charges against Axon and Cochran." *Id.* at 193. This is because Axon and Cochran were "challenging the Commissions' power to proceed at all, rather than actions taken in the agency proceedings." *Id.* at 192. Likewise, the claims here present the same challenges that are collateral to the underlying proceedings. Accordingly, this factor easily weighs in favor of finding jurisdiction.

So too does the third factor weigh in favor of finding jurisdiction. The third factor asks whether the claims "fall outside the agency's expertise." *Id.* at 186. The Court in *Axon* said this inquiry "could hardly be clearer" because "agency adjudications are generally ill suited to address structural constitutional challenges." *Id.* at 194–95. Just like those in *Axon*, the claims maintained

---

[1] "At bottom, *Thunder Basin* rests on a view that it is sometimes more important to allow agencies to work without the bother of having to answer suits against them than it is to allow individuals their day in court." *Axon Enter., Inc*, 598 U.S. 175, 208 (Gorsuch, J., concurring). But this cannot not change this Court's analysis because "as an inferior court, *Thunder Basin* binds us." *Nat'l Ass'n of Immigr. Judges v. Owen*, 160 F.4th 100, 113 n.3 (4th Cir. 2025) (Quattlebaum, J., dissenting).

here are "detached from 'considerations of agency policy'" because they address separation-of-powers issues and the constitutionality of FINRA and the SEC's right to proceed against Plaintiffs in the manner that they have. *Id.* at 194. Accordingly, the third factor also easily points towards jurisdiction.

### 2. First Factor

The Court now turns to "the [first] factor whose application here is least straightforward: whether preclusion of district court jurisdiction 'could foreclose all meaningful judicial review.'" *Id.* at 190. Like in *Axon*, Plaintiffs could "(eventually) obtain review of their constitutional claims through an appeal from an adverse agency action to a court of appeals." *Id.* at 190–91. But the inquiry does not end there. In *Axon*, the Court focused in on the fact that "a problem remains, stemming from the interaction between the alleged injury and the timing of review." *Id.* at 191. That is, the harm alleged is "'being subjected' to 'unconstitutional agency authority'—a 'proceeding by an unaccountable ALJ.'" *Id.* The Court described this as "a here-and-now injury" that "is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Id.* But the Court explained the "limits of that conclusion":

> What makes the difference [in *Axon*] is the nature of the claims and accompanying harms that the parties are asserting. Again, Axon and Cochran protest the "here-and-now" injury of subjection to an unconstitutionally structured decisionmaking process. And more, subjection to that process irrespective of its outcome, or of other decisions made within it. A nearer analogy than any the Government offers is to our established immunity doctrines. There, we have identified certain rights "not to stand trial" or face other legal processes. And we have recognized that those rights are "effectively lost" if review is deferred until after trial. So too here, Axon and Cochran will lose their rights not to undergo the complained-of agency proceedings if they cannot assert those rights until the proceedings are over.

*Id.* at 192 (citations omitted).

Here, the nature of the claims and the accompanying harms are different from those in

*Axon*. *Axon* did not stand for the proposition that all structural constitutional claims could only be meaningfully addressed in collateral district court proceedings. *See id.* at 190–91 (acknowledging that "Axon and Cochran can (eventually) obtain review of their constitutional claims through an appeal from an adverse agency action to a court of appeals"). Rather, the distinction is in the timing of the collateral review. *Id.* at 191. Axon and Cochran brought their district court claims early enough in the agency process that the district court could have stopped their subjection to illegitimate proceedings by illegitimate decision makers. Alternatively, here, there is nothing left for this Court to stop. "A proceeding that has already happened cannot be undone." *Id.* Plaintiffs are at the Fourth Circuit—and as the Supreme Court recognized, this means Plaintiffs can "obtain review of their constitutional claims through [their] appeal." *Id.* at 191.

The Court sympathizes with Plaintiffs regarding this case's timing. Though Plaintiffs did not bring this action until four and a half years into their appeal of FINRA's decision to the SEC, and the parties jointly moved to stay this Court's proceedings pending an earlier appeal to the Fourth Circuit, the parties did return to litigating in this Court in early 2025 while the underlying proceedings continued. But due to unforeseen circumstances, this judicial district lacked the resources to adjudicate Plaintiffs' claims until the case was reassigned to the undersigned in mid-December 2025.

Despite these circumstances, the Court cannot now provide judicial review that is any more meaningful than that provided by the Fourth Circuit. And though the factors point in different directions, "meaningful judicial review is the most important factor in the *Thunder Basin* analysis." *Bennett*, 844 F.3d at 183 n.7 (pre-*Axon*); *accord Nat'l Ass'n of Immigr. Judges v. Owen*, 139 F.4th 293, 308 (4th Cir. 2025); *but see Axon Enter., Inc.*, 598 U.S. at 207 (Gorsuch, J., concurring) ("But what happens when the factors point in different directions, some in favor and others against

immediate judicial review? No one knows. You get to *guess*."). Therefore, this Court concludes that because Plaintiffs have already endured the proceedings before FINRA and the SEC, and because they are now preparing to litigate before the Fourth Circuit, their constitutional claims can receive judicial review within the statutory scheme provided by the Exchange Act. Because of timing, the availability of judicial review in this case distinguishes it from *Axon*. Thus, this Court lacks jurisdiction to hear Plaintiffs' claims.

### 3. Damages and Other Arguments

To the extent that Plaintiffs argue their claims can proceed based on their request for damages, that argument fails because based on available precedent, FINRA and the SEC have immunity from claims for damages. *See Barbara v. New York Stock Exch., Inc.*, 99 F.3d 49, 59 (2d Cir. 1996), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016) (explaining the sovereign immunity of the SEC from all suits for money damages and the extension of that immunity to the New York Stock Exchange, a predecessor of FINRA); *see Ray v. Fin. Indus. Regul. Auth., Inc.*, No. 3:20-CV-327-RJC-DCK, 2021 WL 3260071, at *6 (W.D.N.C. June 25, 2021), *mem. and recommendation adopted*, 2021 WL 3234620 (W.D.N.C. July 29, 2021) ("[T]he Court follows the weight of persuasive authority and concludes that FINRA is entitled to absolute immunity for its regulatory conduct and that there is no private right of action to assert claims related to FINRA's regulatory conduct."); *Howes v. Fin. Indus. Regul. Auth., Inc.*, No. DKC-18-3094, 2023 WL 2213688, at *5 (D. Md. Feb. 24, 2023) (citing cases) ("FINRA is entitled to absolute immunity from suits in connection with the discharge of its regulatory responsibilities."). Thus, neither Plaintiffs' arguments about damages, nor any other arguments by either party not addressed herein, persuade the Court.

Further, just because this Court cannot remedy Plaintiffs' claims under *Axon* does not mean Plaintiffs have not suffered irreparable harm. This Court finds the entirety of Judge Walker's

concurrence in part and dissent in part in *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.* persuasive. 121 F.4th 1314 (D.C. Cir. 2024), *cert. denied,* 145 S. Ct. 2751 (2025). Judge Walker explains that "FINRA is likely a private entity exercising significant executive authority, [and it] subverts the constitutional design." *Id.* at 1343. FINRA "enforces federal law and rules that carry the force of law. And it does so without any initial approval from its supposed supervisor, the SEC." *Id.* at 1344–45. Judge Walker highlights that while "the SEC can reverse a sanction that FINRA imposes[,] . . . reversal of the sanction does not negate the vast array of powers that FINRA exercises *before* the matter even reaches the SEC." *Id.* at 1345. "This panoply of enforcement powers requires no contemporaneous oversight by the SEC. The SEC does not control FINRA's investigations, its prosecutions, or its initial adjudications. Until the SEC accepts an appeal from a final FINRA decision, FINRA wields its enforcement powers unilaterally." *Id.* at 1340. Indeed, "the issue of *when* oversight occurs is just as important as *how much* oversight occurs." *Id.* at 1346. Simply put, "Congress requires FINRA to 'enforce' both its own rules and federal securities law, without adequate control by the President. That arrangement violates the Constitution." *Id.* at 1348.

However, after "the suspense that comes with a ride on the *Thunder Basin* roller coaster," *Axon Enter., Inc.*, 598 U.S. at 211 (Gorsuch, J., concurring), it appears to the Court that it does not have jurisdiction to address the merits of Plaintiffs' claims now that Plaintiffs are before the Fourth Circuit.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendant FINRA's Motion to Dismiss, (Doc. No. 73), is **GRANTED**;

2. Defendants' Motions for Summary Judgment (Doc. Nos. 49, 51) are **DENIED AS MOOT**;

19

3. Plaintiffs' Motion for Summary Judgment and Motion for a Speedy Hearing of a Declaratory Judgment Action (Doc. Nos. 45, 70) are **DENIED AS MOOT**; and

4. The Clerk of Court is directed to close this case.

**SO ORDERED.**

Signed: March 24, 2026

Matthew E. Orso
United States District Judge